IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-03041-CMA-KLM

CUNNINGHAM LINDSEY U.S. INC.,

    Plaintiff,

v.

CRAWFORD & COMPANY,
ROBERT WILLIAMS,
ANDREW LARSON,
WILLIAM WALLS,
THOMAS WALLS, and
RYAN WALLS,

    Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Crawford & Company's ("Defendant Crawford") **Amended Motion to Dismiss** [#71][1] (the "Motion") pursuant to Fed. R. Civ. P. 12(b)(6), filed on May 14, 2018. Plaintiff filed an Opposition to the Motion [#87] (the "Response") on August 7, 2018. Defendant Crawford filed a Reply [#90] on August 21, 2018. The Court has reviewed the Motion, the Response, the Reply, the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

### I. Background

---

[1] "[#71]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

-1-

Plaintiff is a loss adjusting, claims management, and risk solutions firm. *Second Am. Compl.* [#48] at 3. Prior to December 2017, Plaintiff employed the Individual Defendants[2] as skilled claims adjusters to conduct its business. *Id.* Plaintiff alleges that Defendant Crawford deliberately induced the Individual Defendants to resign their positions at Plaintiff's firm and join Defendant Crawford in order to shut down Plaintiff's Major & Complex Loss business in Denver. *Id.* at 8. Following the Individual Defendants' resignations, Plaintiff received several items of correspondence from its clients, requesting that their cases be transferred to Defendant Crawford. *Id.* Plaintiff alleges that it has lost substantial revenue as a result of the solicitation of its clients by the Individual Defendants and Defendant Crawford. *Id.* at 9.

Defendant Crawford seeks dismissal of all claims Plaintiff has asserted. Specifically, Defendant Crawford seeks dismissal of Plaintiff's claims of intentional interference with contracts ("Claim Six") and intentional interference with prospective economic advantage ("Claim Seven"), arguing both claims fail to meet the requisite pleading standards. *See Motion* [#71]; *Second Am. Compl.* [#48]. Plaintiff opposes Defendant Crawford's Motion [#71], arguing that Plaintiff pleaded sufficient facts that plausibly allege claims for relief against Defendant Crawford. *See generally Response* [#87]. Alternatively, in the event of a dismissal, Plaintiff asks the Court to dismiss the claims without prejudice.

## II. Legal Standard

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test "the

---

[2] The Individual Defendants consist of Defendants Robert Williams, Andrew Larson, William Walls, Thomas Walls, and Ryan Walls, all of whom worked for Plaintiff prior to their employment at Defendant Crawford.

sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Fed. R. Civ. P. 12(b)(6) states that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "The Court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

To withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Silva v. US Bank, Nat'l Ass'n*, 294 F. Supp. 3d 1117, 1124 (D. Colo. 2018) (citing *Iqbal*, 556 U.S. at 678). Allegations that are "so general that they encompass a wide swath of conduct, much of it innocent, will not be sufficient." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02868-MSK-KMT, 2013 WL 1231875, at *2 (D. Colo. Mar.

27, 2013) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations omitted)).

The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679.

### III. Analysis

### A. Intentional Interference with Contracts (Claim Six)

Claim Six in Plaintiff's Second Amended Complaint [#48] alleges intentional interference with contracts against Defendant Crawford. Colorado recognizes the tort of intentional interference with contracts. *Mueller v. Swift*, No. 15-cv-1974-WJM-KLM, 2017 WL 2362137, at *6 (D. Colo. May 31, 2017) (citing *Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210 (Colo. 1984)). "The tortious conduct occurs when the defendant, not a party to the contract, induces the third party to breach the contract, or interferes with the third party's performance of the contract." *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 170 (Colo. 1993).

To sufficiently plead a claim for intentional interference with contracts, Plaintiff is required to include facts in its Second Amended Complaint [#48] that plausibly allege: (1) the existence of a contractual relationship between Plaintiff and a third party; (2) Defendant Crawford knew or reasonably should have known of the contract; (3) Defendant Crawford intentionally and improperly interfered with that contract; (4) Defendant Crawford's conduct

caused the breach or non-performance of the contract by the third party; and (5) Plaintiff suffered damages as a result. *Swift*, 2017 WL 2362137, at *7 (citing *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1120 (D. Colo. 2016)). Here, Defendant Crawford's arguments are directed to the first and third elements, which the Court addresses respectively. *See Motion* [#71]; *Response* [#87] at 5-10; *Reply* [#90] at 2-7.

### 1. Existence of a Contract

Plaintiff seemingly concedes that it has not identified any specific contract in the Second Amended Complaint [#48], as it argues that "[Plaintiff] is not required at the pleading stage to specifically identify each and every contract with which [Defendant Crawford] interfered." *Response* [#87] at 5. Further, Plaintiff states that, "[a]lthough [Plaintiff] has not included in its pleading an exhaustive list of each and every contract it maintained with the clients . . . [Plaintiff] plainly has alleged the existence of such clients and such contracts." *Id.* To support its argument, Plaintiff cites *Oaster v. Robertson*, 173 F. Supp. 3d 1150 (D. Colo. 2016), where the court allowed an intentional interference with contracts claim to proceed because it was "undisputed that a contract existed." *Id.* at 1179. In *Oaster*, the Court found that a contract existed between the plaintiff and defendant during the parties' business relationship, and it was undisputed that the parties worked together on a "myraid of projects with numerous clients." *Id.*

Defendant Crawford disagrees with Plaintiff's argument and states that Plaintiff "must offer *specific factual allegations* establishing that it had contract(s) with a third party with which the defendant purportedly interfered." *Reply* [#90] at 2 (emphasis added) (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *Shell v. Am.*

*Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1060 (D. Colo. 2012)). Defendant Crawford also distinguishes *Oaster* by noting that the court there merely held plaintiff need not "*provide a copy* of any contracts to sufficiently allege a claim for breach of contract or interference with contractual relations." *Id.* at 3 (emphasis in original).

"To succeed on a claim for intentional interference with existing contractual relations, of course, one must plead and prove a valid contract with a third party." *Nutting v. RAM Sw., Inc.*, 106 F. Supp. 2d 1121, 1128 (D. Colo. 2000). Here, Plaintiff directs the Court to two paragraphs in the Second Amended Complaint [#48] where Plaintiff states it has "alleged the existence of . . . such contracts." *Response* [#87] at 5. However, these paragraphs identically state: "At all times from January 1, 2015 to present, [Plaintiff] was party to numerous ongoing contracts for claims management and other related services with its clients." *Second Am. Compl.* [#48] at 13, 15. Plaintiff has failed to further identify the contracts themselves, the other parties to the alleged contracts, or how they were interfered with and when.

Furthermore, the Court agrees with Defendant Crawford's interpretation of *Oaster*. *Oaster* states: "The Court does not agree with [d]efendant's assertion that [p]laintiff must *provide a copy* of any contracts to sufficiently allege a claim for . . . interference with contractual relations. . . . [because] [h]ere, it is undisputed that a contract existed between the Plaintiff and the Defendant . . . at some point during the parties' business relationships." 173 F. Supp. 3d at 1179 (emphasis added).

This case is easily distinguishable from *Oaster.* Here, there are no specific factual allegations made regarding which contracts are even in dispute, nor is a single contract identified that Defendant Crawford purportedly interfered with. Additionally, in *Oaster*, the

Court merely found that the Plaintiff was not required to provide a copy of the contract in question, given the undisputed nature of its existence. *Id.*

Finally, Plaintiff argues that to sufficiently state a claim for intentional interference with contracts depends on whether Defendant Crawford "was provided fair notice" of the claims against it, and cites *Kansas Penn Gaming* in support of its argument. *Response* [#87] at 6. However, *Kansas Penn Gaming* dealt with the pleading requirements of a 42 U.S.C. § 1983 claim against individual government actors, and not the pleading requirements of a claim for intentional interference with contracts. 656 F.3d at 1212, 1215. Furthermore, Fed. R. Civ. P. 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the [Second Amended Complaint], it is hard to see how [Plaintiff] could satisfy the requirement of providing not only 'fair notice' of the nature of [its] claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3. The Court, therefore, does not find Plaintiff's argument persuasive.

For the foregoing reasons, the Court finds that Plaintiff's allegations fall short of the pleading requirements as to element one of Plaintiff's intentional interference with contracts claim. *See Purac Am. Inc. v. Birko Corp.*, No. 14-cv-01669-RBJ, 2015 WL 1598065, at *5 (D. Colo. Apr. 8, 2015) (dismissing claim for intentional interference with contract when only "references to relationships" are made in a counterclaim).

**2.  Intentional and Improper Interference**

While the Court finds reason for dismissal on the first element alone, out of an abundance of caution, the Court also considers whether Plaintiff's allegations regarding Defendant Crawford's alleged intentional and improper interference with contracts are

adequately pleaded.

Plaintiff argues that "[t]he allegations identified [in the Second Amended Complaint] show that [Defendant Crawford] affirmatively acted improperly by coordinating a mass resignation from [Plaintiff's] Denver office to eliminate [Plaintiff] from competition in the market." *Response* [#87] at 9. Further, Plaintiff alleges that "[Defendant Crawford] intended[ ] [to] force [Plaintiff's] clients in the area to do business with Crawford or other competitors instead of [Plaintiff]." *Id.* Finally, Plaintiff directs the Court to several paragraphs within the Second Amended Complaint [#48] which, Plaintiff maintains, demonstrate that Plaintiff properly pleaded improper interference. *Id.* at 7.

Defendant Crawford argues that in order to survive a motion to dismiss, Plaintiff must have pleaded that Defendant Crawford's purported interference with its contracts constituted "improper" conduct. *Reply* [#90] at 4-5. Defendant Crawford states that Plaintiff merely points to "conclusory and vague 'on information and belief' allegations that [Defendant Crawford] 'solicited and induced' and 'encouraged or directed' [Defendant Crawford] employees to take certain action." *Id.* at 5. Furthermore, Defendant Crawford argues that to properly plead improper conduct, Plaintiff is required to allege that Defendant Crawford used "threats of physical violence or lawsuits, economic pressures, and misrepresentations." *Id.* (citing *Bolsa Res., Inc. v. Martin Res., Inc.*, No. 11-cv-01293-MSK-KMT, 2014 WL 4882132, at *9 (D. Colo. Aug. 28, 2014)).

Under Colorado law, there is no improper interference with a contract if: "(1) [the conduct] concerns a matter of competition between the defendant and plaintiff; (2) the defendant does not employ wrongful means; (3) the action does not amount to an unlawful restraint of trade; and (4) the defendant's purpose is, at least in part, to advance its own

interest." *Phillips v. Carpet Direct Corp.*, No. 16-cv-02438-MEH, 2017 WL 121630, at *13 (D. Colo. Jan. 10, 2017).  Wrongful means include threats of physical violence, fraud, civil suits, and criminal prosecutions.  *Id.* (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 502 (Colo. 1995)).  Economic pressure also qualifies as an improper inducement to breach contractual or business relationships.  *Bolsa Res.*, 2014 WL 4882132, at *9.  However, *Ervin* notes that "[c]ompetition necessarily assumes, and is predicated upon, economic pressure."  908 P.2d at 502.  Therefore:

> The question whether this [economic] pressure is proper is answered in the light of the circumstances in which it is exerted, the object sought to be accomplished by the actor, the degree of coercion involved, the extent of the harm that it threatens, the effect upon the neutral parties drawn into the situation, the effects upon competition, and the general reasonableness and appropriateness of this pressure as a means of accomplishing the actor's objective.

*Id.* at 501 (citing section 767 of the Restatement (Second) of Torts).

Here, Plaintiff does not allege in its Second Amended Complaint [#48] that Defendant Crawford engaged in threats of physical violence, fraud, or civil or criminal lawsuits.  Nor does Plaintiff allege that Defendant Crawford's actions are an unlawful restraint of trade or a violation of antitrust laws.  *Cf. Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1119 (finding that if behavior is plausibly illegal and may violate antitrust laws, economic pressure may be improper).  Furthermore, Plaintiff does not shed sufficient light on the degree of coercion involved or how Defendant Crawford acted unreasonably in applying economic pressure.  Thus, the Court finds that Plaintiff's allegations are vague.  For example, Plaintiff alleges that:

> On information and belief, each of the Individual Defendants, while still employed with [Plaintiff], solicited and encouraged [Plaintiff's] clients to terminate their business relationship with [Plaintiff] and instead establish a

> business relationship with [Defendant Crawford]. On information and belief, [Defendant Crawford], acting primarily through its [Chief Operating Officer], encouraged or directed the Individual Defendants to do so.

*Second Am. Compl.* [#48] at 9-10. Plaintiff again fails to specify which business relationships were interfered with, what factual circumstances surrounded the purported interference, and facts to establish that the alleged conduct was anything more than economic pressure applied in a competitive marketplace.

For these reasons, the Court finds that the allegations fall short of the pleading requirements as to element three. *See Kansas Penn Gaming*, 656 F.3d at 1215 (noting that if allegations in a complaint are so general that they encompass a wide swath of conduct, much of it innocent, then a plaintiff has not nudged a claim from conceivable to plausible); *see also Magicall, Inc. v. Advanced Energy Indus., Inc.*, No. 17-cv-02582-RBJ, 2018 WL 3619720, at *9 (D. Colo. July 30, 2018) ("One may not involve a company, foreign or domestic, in expensive and time consuming federal court litigation because he thinks that the defendant might have done something wrong and hopes to find something in discovery that will show it. . . . [P]laintiffs must allege some facts that plausibly show that plaintiff has a case.").

For the foregoing reasons, the Court finds that Plaintiff has not plausibly alleged elements one or three of an intentional interference with contracts claim, and recommends that Claim Six be dismissed without prejudice.

**B.**     **Intentional Interference with Prospective Economic Advantage (Claim Seven)**

Claim Seven in Plaintiff's Second Amended Complaint [#48] alleges intentional interference with prospective economic advantage against Defendant Crawford. Under Colorado law, "the crucial question in determining liability for tortious interference with

prospective [economic] advantage is whether defendant's interference was intentional and improper." *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622 (10th Cir. 1995) (citing *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619, 623 (Colo. App. 1988)). "As a general rule, however, a plaintiff cannot sue one of its competitors for intentional interference in prospective economic advantage." *Id.* at 622-623 (citing *Mem'l Gardens*, 690 P.2d at 210-11).

To sufficiently plead a claim for intentional interference with prospective economic advantage, Plaintiff is required to include facts in its Second Amended Complaint [#48] that establish that: (i)[Defendant Crawford] induced a third-party to refuse to enter into or refuse to continue a contractual relationship with [Plaintiff]; (ii) [Defendant Crawford] did so intentionally; and (iii) [Defendant Crawford] used improper means to do so." *L-3 Commc'ns Corp.*, 2013 WL 1231875, at *2 (citing *MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 886 (Colo. App. 2007)).

In support of its claim, Plaintiff alleges that Defendant Crawford's actions were deliberately calculated to eliminate Plaintiff from the Denver market and leave its clients with little choice but to turn to Defendant Crawford. *Response* [#87] at 12.

Defendant Crawford argues that Plaintiff's Complaint does not identify any economic advantage with which Defendant Crawford interfered (element one), and second, that Plaintiff did not sufficiently allege improper conduct by Defendant Crawford (element three). *Reply* [#90] at 7. Defendant Crawford argues that for these reasons, Claim Seven should be dismissed. *Motion* [#71] at 6.

### 1. Inducing a Third-Party to Refuse to Enter/Continue a Contract

Specifically, Defendant Crawford states that "[Plaintiff] does not identify any

'economic advantage' . . . not a single customer identified, not one prospective client with which it was negotiating identified, and no other potential contractual relationship identified – it states only that it had 'numerous ongoing and prospective business relationships.'" *Id.* at 7. In support, Defendant Crawford cites *Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1059 (D. Colo. 2017), where the court dismissed an intentional interference with prospective economic advantage counter-claim because, without "suggesting a reasonable likelihood of contracting with a *particular* third party," the claimant had failed to plead facts sufficient to survive a motion to dismiss. *Id.* (emphasis added).

Here, Plaintiff merely alleges that existing and prospective business relationships were the intended target of Defendant Crawford's alleged improper tactics. *Response* [#87] at 11. Plaintiff has not identified any particular third parties with which it had existing or prospective business relationships, nor has it detailed what those business relationships are, other than "contracts" or "clients." Therefore, in line with *Crocs*, the Court finds that Plaintiff has not alleged sufficient facts that are more than speculative to meet the requirements of element one of an intentional interference with prospective economic advantage claim.

### 2. Improper Means

While the Court finds reasons for dismissal on element one alone, the Court again, out of an abundance of caution, considers whether Plaintiff has properly pled element three of an intentional interference with prospective economic advantage claim. When the parties are engaged in business competition, the "improper means" element is satisfied by showing that the interference took the form of conduct that is "intrinsically wrong" as well as conduct that is illegal, in violation of professional standards, achieved through violence

or threats, arising from misrepresentation or unfounded litigation, or via defamation. *L-3 Commc'ns Corp.*, 2013 WL 1231875 at *2 (citing *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1197-98 (Colo. App. 2009) (stating that "wrongful means" refers to conduct such as 'physical violence, fraud, civil suits, and criminal prosecutions)).

To satisfy the "improper means" element, Plaintiff alleges that "[Defendant Crawford] acted improperly through its calculated attempt to destroy [Plaintiff's] ability to compete in the Denver market." *Response* [#87] at 13. In support thereof, Plaintiff argues that Defendant Crawford's conduct unlawfully restrains trade, citing to Colo. Rev. Stat. § 6-4-104, which has been interpreted to include contracts or combinations in restraint of trade which "are designed to destroy competition in a particular market." *Id.* (citing *People ex rel. Woodard v. Colo. Springs Bd. of Realtors, Inc.*, 692 P.2d 1055, 1062 (Colo. 1984)). However, Plaintiff raises this argument for the first time[3] in its Response [#87], and did not allege any violations of the Colorado statute, or any other antitrust laws, in its Second Amended Complaint [#48].

Defendant Crawford argues that Plaintiff's Second Amended Complaint [#48] fails to allege sufficient facts to satisfy the "improper means" element of an intentional interference with prospective economic advantage claim, and cites *Palmer v. First Transit, Inc.*, No. 13-cv-02401-RBJ, 2014 WL 3267306, at *4 (D. Colo. July 8, 2014) ("the crucial question in determining liability is whether defendant's interference was intentional and improper."). *Id.* at 7-8.

---

[3] The Court notes that Plaintiff raises this argument while discussing the intentional interference with prospective economic advantage claim, and not the intentional interference with contracts claim.

Again, the Court agrees with Defendant. Plaintiff has not alleged the existence of any of the elements required to plausibly demonstrate that Defendant acted with wrongful or improper means. Plaintiff merely alleges that "[o]n information and belief, [Defendant Crawford] and its [Chief Operating Officer] anticipated and intended that a sudden, coordinated mass resignation of all of [Plaintiff's] Denver employees would effectively shut down [Plaintiff's] business in Denver." *Second Am. Compl.* [#48] at 10. Plaintiff has not alleged factual allegations in its Second Amended Complaint [#48] that establish that any of Defendant Crawford's conduct was illegal, in violation of professional standards, achieved through violence or threats; or arose from misrepresentation, unfounded litigation, or defamation. *See L-3 Commc'ns Corp.*, 2013 WL 1231875, at *2.

Furthermore, the Court finds that Plaintiff's argument regarding Colo. Rev. Stat. § 6-4-104 is misplaced. That statute provides the basis for an entirely separate cause of action. In order to state a claim under C.R.S. § 6-4-104, Plaintiff must demonstrate by virtue of Defendant Crawford's anticompetitive conduct, that Defendant Crawford "participated in and facilitated a contract, combination, or conspiracy illegally restricting trade and commerce." *Pomerantz v. Microsoft Corp.*, 50 P.3d 929, 931 (Colo. App. 2002). Here, Plaintiff has nowhere alleged the elements of a violation of Colo. Rev. Stat. § 6-4-104 in its Second Amended Complaint [#48], nor has it identified any such claim in that pleading. Furthermore, while Plaintiff may be relying on the statute to demonstrate Defendant Crawford engaged in wrongful or improper conduct, merely reciting the activity prohibited by that statute is inadequate.

Therefore, the Court finds that Plaintiff has not met the pleading requirements for element three of an intentional interference with prospective economic advantage claim.

*See Occusafe, Inc.*, 54 F.3d at 623 (hiring away seven employees is not "improper" for purposes of a claim for intentional interference with prospective economic advantage).

For the foregoing reasons, the Court finds that Plaintiff has not met the pleading requirements for elements one or three of an intentional interference with prospective economic advantage claim, and recommends that Claim Seven be dismissed. *See Iqbal*, 556 U.S. at 678 (2009) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .").

## IV. Conclusion

Based on the foregoing, the Court respectfully **RECOMMENDS** that the Motion [#71] be **GRANTED** and Plaintiff's Claims Six and Seven be **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should not attach to a dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this **Recommendation** to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the **Recommendation** by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this **Recommendation** must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: December 3, 2018

BY THE COURT:

*/s/ Kristen L. Mix*

Kristen L. Mix
United States Magistrate Judge